IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**PD HOMECARE ASSOCIATES, LLC**
**dba LIKEN HOME CARE**

                Plaintiff,        **JURY DEMAND**

                                  CIVIL: **2:24-cv-774**

vs.

**UNITED STATES OF AMERICA**

                **Defendant.**

## COMPLAINT

PD Home Care Associates, LLC dba Liken Home Care, (hereinafter "Plaintiff or "Liken Home Care"), by and through its undersigned counsel and files this Complaint against Defendant, United States of America ("Defendant" or "United States") pursuant to 26 U.S.C. § 7422. Plaintiff files this civil action for a federal tax refund that was duly and timely claimed and filed with the Secretary of Treasury via the Internal Revenue Service (the "IRS" or the "Service") yet remains unchallenged and unpaid to Plaintiff.

### JURISDICTION, VENUE, AND PARTIES

1. Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1340 and 1346.

2. Venue of this Court is proper pursuant to 28 U.S.C. § 1402.

3. Plaintiff is a company in good standing with the Commonwealth of Pennsylvania whose principal place of business is 103 Yost Blvd, Suite 201, Pittsburgh, PA 15221.

4.  Defendant is the United States of America and may be served by mailing two copies of this Complaint by certified mail to Eric G. Olshan, United States Attorney for the Western District of Pennsylvania, 700 Grant Street, Suite 4000, Pittsburgh, PA 15219, and mailing two copies of the Complaint by certified mail to the Honorable Merrick Garland, Attorney General of the United States, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

## NATURE OF THE FEDERAL TAX ISSUE AND ACTION

### Federal Employment Taxes

5.  Pursuant to federal law, employers are required to withhold certain federal income taxes and taxes from the Federal Insurance Contributions Act ("FICA Taxes") from their employee's wages and other compensation.

6.  Pursuant to 26 U.S.C. §§ 3102, 3111, 3301, and 3402, employers are also required to pay their own portion of FICA Taxes and taxes from the Federal Unemployment Taxes and Federal Unemployment Tax Act ("FUTA Taxes"), and FICA Taxes and FUTA Taxes are collectively commonly referred to as "employment taxes" or "payroll taxes".

7.  Pursuant to 26 U.S.C. §§ 6302 and 6157, as well as 26 C.F.R. §§ 31.6302-1, 31.6302(c)-1, and 31.6302(c)-3, employers are required to periodically deposit employment tax payments in certain prescribed federal deposit banks.

8.  Pursuant to 26 U.S.C. § 6011, as well as 26 C.F.R. § 31.6071(a)-1, employers are further required to file quarterly payroll tax returns ("IRS Form 941" or "Form 941") and annual returns for their FUTA Taxes.

### The COVID-19 Pandemic-Related "CARES" Act – Employee Retention Credit ("ERC")

9.  At the outset of the global COVID-19 Pandemic, the United States enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES" Act) on March 27, 2020,

which provided numerous federal government programs and funding in response to the significant and acute economic challenges faced by the American people, businesses, and taxpayers.[1]

10. Amongst the CARES Act provisions, it provided for a new Employee Retention Credit ("ERC" or "ERTC") under 26 U.S.C. § 3134, which is a "refundable" tax credit applied against the employer-portion of businesses employment taxes for the period from March 12 through December 31, 2020.[2] The ERC tax credit program was then amended for expansion three times, including extending eligibility to periods to the end of calendar year 2021, in the Taxpayer Certainty and Disaster Relief Act of 2020 (the "Relief Act"), the American Rescue Plan Act of 2021 (ARPA), and the Infrastructure Investment and Jobs Act (IIJA).[3]

11. The ERC provides a few different avenues of qualification to claim the benefits, and all aimed at both incentivizing and rewarding businesses maintaining employment during the COVID-19 pandemic in 2020 and 2021. Specifically, businesses who demonstrated certain statutorily defined gross receipt drops by quarter, as compared to pre-pandemic periods in 2019, were eligible for a per employee per quarter refundable ERC tax credits. Furthermore, certain businesses meeting certain defined business disruption criteria by quarter were equally eligible for the same per employee refundable ERC tax credit by quarter, as well as certain "recovery startup businesses."[4]

12. For the March 12 through December 31, 2020 time periods and pursuant to 26 U.S.C. § 3134, qualifying employers receive a tax credit against employment taxes of up to 50%

---

[1] *See* The Coronavirus Aid, Relief and Economic Security Act (CARES Act), Pub. L. No 116-136, 134 Stat. 281 (2020).
[2] *See id.*
[3] *See* The Taxpayer Certainty and Disaster Relief Act of 2020, Pub. L. 116-260, Div. EE (2020).
[4] *See* The Infrastructure Investment and Jobs Act (IIJA), Pub. L. No 116-136, 135 STAT. 429 (2021).

of qualified wages ($10,000 per employee for the year including certain health care expense), but no more than $5,000 per employee total for the 2020 year.

13. For the January 1 through September 30, 2021 time periods and pursuant to 26 U.S.C. § 3134, qualifying employers receive a tax credit against employment taxes of up to 70% ($10,000 per employee per calendar quarter including certain health care expenses), but no more than $7,000 per quarter per employee for each eligible 2021 quarter.

### ERC – Refundability and Amendment for Refund Claim

14. Pursuant to 26 U.S.C. § 3134(b), ERC tax credit claims are first used to offset employment taxes for the respective period, and any excess is further "refunded" to the taxpayer claimant per 26 U.S.C. §§ 6402(a) and 6413(b).

15. Pursuant to 26 U.S.C. § 6511, taxpayers have up to three (3) years from the date of filing a tax return to amend the same return for a claim for refund or credit of taxes.

### IRS Notices – Audits, Examinations, Disallowances, Deficiencies, etc.

16. A notice of an audit or examination of a taxpayer's claim for refund or credit by the IRS would be an IRS form letter from its Notice CP20 or CP75 series, or in the alternative, a notice in substantially similar form and with information as to be compliant with the Internal Revenue Code and IRS rules and procedures.[5]

17. A notice of a disallowance of a taxpayer's claim for refund or credit by the IRS would be an IRS form letter nos. 105C or 106C, or in the alternative, a notice in substantially

---

[5] *See* Notice CP20 Series, IRS Taxpayer Advocate Service (June 2, 2022. rev. May 16, 2023), https://www.taxpayeradvocate.irs.gov/notices/notice-cp20/; Notice CP75 Series, IRS Taxpayer Advocate Service (April 27, 2022. rev. Aug. 16, 2023), https://www.taxpayeradvocate.irs.gov/notices/notice-cp75/; *see also* IRS Notice Roadmap, IRS Taxpayer Advocate Service, https://www.taxpayeradvocate.irs.gov/get-help/roadmap/.

similar form, with all information as to be compliant, and sent to the taxpayer via certified mail or registered mail.[6]

18. A notice of a deficiency of a taxpayer's tax by the IRS would be an IRS form letter nos. CP3219 or CP3219A, or in the alternative, a notice in substantially similar form, with all information as to be compliant, and sent to the taxpayer via certified mail or registered mail.[7]

19. An IRS form notice no. CP188 is a notice used and sent by the IRS to taxpayers that it has acknowledged a taxpayer's tax refund claim, but it is holding the refund pending the verification of no other taxes owed that would be appropriate to offset the credit claim against.[8] An IRS form notice no. CP188 is not a notice of audit, notice of examination, notice of disallowance, nor notice of deficiency.[9]

20. An IRS form notice no. CP210 is a notice used and sent by the IRS to taxpayers that it has changed something on a taxpayer's tax return.[10] An IRS form notice no. CP210 is not a notice of audit, notice of examination, notice of disallowance, nor notice of deficiency.[11]

---

[6] *See* Notice of Claim Disallowance, IRS Taxpayer Advocate Service (June 2, 2022. rev. May 16, 2023), https://www.taxpayeradvocate.irs.gov/notices/notice-of-claim-disallowance/; Letter 105 C, Claim Disallowed, IRS Taxpayer Advocate Service (April 5, 2022. rev. May 24, 2023), https://www.taxpayeradvocate.irs.gov/notices/letter-105-c/; *see also* 26 U.S.C. § 6532; IRS Notice Roadmap, IRS Taxpayer Advocate Service, https://www.taxpayeradvocate.irs.gov/get-help/roadmap/.

[7] *See* Letter 3219, Notice of Deficiency, IRS Taxpayer Advocate Service (Dec. 20, 2023), https://www.taxpayeradvocate.irs.gov/notices/letter-3219/; Understanding your CP3219A notice, Internal Revenue Service, https://www.irs.gov/individuals/understanding-your-cp3219a-notice; *see also* 26 U.S.C. § 6212; IRS Notice Roadmap, IRS Taxpayer Advocate Service, https://www.taxpayeradvocate.irs.gov/get-help/roadmap/.

[8] *See* Understanding Your CP188 Notice, Internal Revenue Service, https://www.irs.gov/individuals/understanding-your-cp188-notice.

[9] *See id.*
[10] *See id.*
[11] *See id.*

**PLAINTIFF BACKGROUND AND FACTUAL ASSERTAIONS**

21.     Plaintiff is a Licensed Home Care Agency in the western portion of Pennsylvania, including Washington and Beaver Counties, in which it has provided home care services to the elderly, disabled, and recovering ill since 1974.  Plaintiff has operated via its current Pennsylvania Limited Liability Company (LLC) since at least 2008 with continuous operations and employees since.

22.     During 2020 and 2021, Plaintiff timely determined and executed its quarterly and annual employment tax payment and reporting; most specifically through its timely filed quarterly reports via the IRS Forms 941.  For its original timely filings, Plaintiff did not claim the ERC tax credits.

23.     During late 2021 and into early 2022, Plaintiff, in consultation with and under advisement of its qualified tax advisors and other business advisors, determined that it was eligible for the ERC tax credits for the last three quarters of 2020 and the first three quarters of 2021 and further determined its exact qualification and tax credit claim amounts.

24.     On February 22, 2022, Plaintiff properly filed amended quarterly federal employment tax reports for last three quarters of 2020 and the first three quarters of 2021with claims for refund requested pursuant to the ERC tax credits for these quarters as follows (hereafter collectively referred to as the "ERC Claimed Quarters").

| Employment Taxes Period End | ERC Credit Claim Amount | Date of Filing for Credit or Refund |
|---|---|---|
| June 30, 2020 | $ 176,028.98 | 2/22/2022 |
| September 30, 2020 | $ 105,400.61 | 2/22/2022 |
| December 31, 2020 | $ 243,026.09 | 2/22/2022 |
| March 31, 2021 | $ 357,743.72 | 2/22/2022 |

| Employment Taxes Period End | ERC Credit Claim Amount | Date of Filing for Credit or Refund |
|---|---|---|
| June 30, 2021 | $ 132,955.79 | 2/22/2022 |
| September 30, 2021 | $ 152,333.52 | 2/22/2022 |
| Total | $ 1,167,488.71 | |

25. From April 2022 through at least March 2024, Plaintiff, either directly or through its duly designated representatives, contacted the IRS on at least ten (10) instances in an effort to obtain statuses of all claims for refund for the ERC Claimed Quarters.

26. From June 2022 through June 2023, Defendant issued multiple letters to the Plaintiff, and Plaintiff's duly designated representatives, that Defendant:

(a) timely received Plaintiff's amended Form 941 for the ERC Claimed Quarters,

(b) confirmed the Plaintiff's ERC claimed amounts as summarized in statement no. 24 above,

(c) acknowledged the Plaintiff overpayments for the ERC Claimed Quarters, and

(d) communicated that the Plaintiff's claim for refund will be issued.

See **Exhibit A** attached to this filing, *herein*, which are copies of the available IRS CP210 letters sent to Plaintiff from June 2022 through June 2023, and the table below summarizes all the known and available correspondence of the Defendant to the Plaintiff or Plaintiff's representatives:

| ERC Claimed Quarter | ERC Credit Claim Amount | CP188 | CP210 |
|---|---|---|---|
| June 30, 2020 | $ 176,028.98 | | 11/14/2022 |
| September 30, 2020 | $ 105,400.61 | 11/21/2022 | 11/21/2022 |
| December 31, 2020 | $ 243,026.09 | 6/9/2023 | 11/9/2023 |

| ERC Claimed Quarter | ERC Credit Claim Amount | CP188 | CP210 |
|---|---|---|---|
| March 31, 2021 | $ 357,743.72 | 6/5/2023 | |
| June 30, 2021 | $ 132,955.79 | 6/6/2022 | 6/6/2022 |
| September 30, 2021 | $ 152,333.52 | 6/5/2023 | 6/5/2023 |
| Total | $ 1,167,488.71 | | |

27.     Despite Defendant's continued letters and communication to the Plaintiff as summarized in statement no. 26 above, it continued to refuse or fail to issue the claimed refunds to the Plaintiff.

28.     Defendant has not delivered any notices of audit or examination to the Plaintiff with respect to the ERC Claimed Quarters.  Specifically, Defendant has not delivered any IRS form letter from its Notice CP20 or CP75 series, nor any notice or letter in substantially similar form notifying the Plaintiff of any tax audit or examination for its ERC Claimed Quarters.

29.     Defendant has not delivered any notices of disallowances to the Plaintiff with respect to the ERC Claimed Quarters.  Specifically, Defendant has not delivered any IRS form letter nos. nos. 105C or 106C, nor any notice or letter in substantially similar form notifying the Plaintiff of any credit or refund disallowances for its ERC Claimed Quarters.

30.     Defendant has not delivered any notices of deficiency to the Plaintiff with respect to the ERC Claimed Quarters.  Specifically, Defendant has not delivered any IRS form letter nos. nos. 3219 or 3219A, nor any notice or letter in substantially similar form notifying the Plaintiff of any tax deficiency for its ERC Claimed Quarters.

31.     Defendant and its administrative agency, the IRS, are not currently conducting any tax audit, nor tax examination, nor tax administrative appeal of any of the Plaintiff's federal taxes pursuant to Title 26 of the United States Code regardless of nature of taxes and time period.

32. Defendant has made no claim to the Plaintiff of any federal taxes owed by Plaintiff, regardless of nature and time period, under Title 26 of the United State Code that the ERC credits for the ERC Claimed Quarters would be appropriate to use as an offset for any such owed taxes.

33. Plaintiff's IRS federal tax transcripts for its federal taxpayer account, as of May 3, 2024, confirms the Defendant:

(a) timely received Plaintiff's amended Form 941 for the ERC Claimed Quarters,

(b) confirmed the Plaintiff's ERC claimed amounts as summarized in statement no. 24 above,

(c) acknowledged the Plaintiff overpayments for the ERC Claimed Quarters, and

(d) acknowledged no tolling events have occurred on the respective time periods.

See **Exhibit B** attached to this filing, *herein*, which are copies of the May 3, 2024 IRS transcripts for the ERC Claimed Quarters.

34. Such transcripts of the Plaintiff described in statement no. 33 above additionally support and are probative of Plaintiff's assertions of statement nos 27, 28, 29, 30, and 31 above.

35. On August 5, 2023, Plaintiff submitted a congressional inquiry report, including a Form 911 for a request for assistance from the IRS Taxpayer Advocate Service (TAS) for its unpaid tax credit claims for the ERC Claimed Quarters.  On September 15, 2023, the TAS initiated a taxpayer assistance case for these claims, but as of the date of this filing, Plaintiff has no knowledge of any substantive progress on its congressional inquiry or assistance from TAS.

**CAUSE OF ACTION**

36.     An American taxpayer is permitted to file a delayed refund suit against the United States, pursuant to 26 U.S.C. §§ 7422 and 6532, for the recovery of taxes imposed under Title 26 of the U.S. Code in Federal District Court, provided:

(a) a claim for refund has been filed with the IRS,

(b) it has been at least six (6) months from the date of such filing, and

(c) it has yet been two (2) years from the date the IRS notified the taxpayer that such a claim has been disallowed.

37.     Plaintiff, PD Home Care Associates, LLC dba Liken Home Care, is an American taxpayer who has filed claims for refunds of its employment taxes imposed under Title 26 as follows:

| Employment Taxes Period End | ERC Credit Claim Amount | Date of Filing for Credit or Refund |
|---|---|---|
| June 30, 2020 | $ 176,028.98 | 2/22/2022 |
| September 30, 2020 | $ 105,400.61 | 2/22/2022 |
| December 31, 2020 | $ 243,026.09 | 2/22/2022 |
| March 31, 2021 | $ 357,743.72 | 2/22/2022 |
| June 30, 2021 | $ 132,955.79 | 2/22/2022 |
| September 30, 2021 | $ 152,333.52 | 2/22/2022 |
| Total | $ 1,167,488.71 | |

38.     Defendant, the United States of America, via the IRS has failed to issue the claimed refunds to the Plaintiff, and it has further failed to notify Plaintiff of any claim audits or disallowances.

39. It has been longer than six (6) months since the Plaintiff has filed the refund claims, and since the IRS has failed to notify Plaintiff of any claim disallowances, it has yet been two (2) years from such a notification.

40. Plaintiff is entitled to the credits and its claims for refund as claimed and identified in statement no. 35 above, including any additional interest it is entitled to under the Internal Revenue Code (26 U.S.C.).

41. Plaintiff is entitled to reasonable attorney's fees and legal costs associated with this cause of action pursuant to 28 U.S.C. § 2412.

## STAUTORY BURDEN OF PROOF SHIFT MET – IRC § 7491
## DEFENDANT, UNITED STATES, NOW BEARS BURDEN OF PROOF

42. For federal tax causes of action initiated by a taxpayer plaintiff in district court, the shift of the burden of proof from a taxpayer, as a plaintiff, to the United States, as a defendant, is specifically codified by statute in 26 U.S.C. § 7491.[12]

43. Pursuant to 26 U.S.C. § 7491(a), a corporate or partnership taxpayer who introduces "credible evidence" in any court proceeding with respect to a factual issue, alleviates the burden of proof for that issue, which is shifted to the United States; provided that:

　　a. The taxpayer has complied with the requirements of the underlying item,

　　b. The taxpayer has maintained all records required of it pursuant to the Internal Revenue Code and is cooperate with any and all information and document requests, and

---

[12] *See also* Fed. Evid.R. 301.

      c.    The basis of the record determines that the United States was not "substantially justified" in its act.[13]

44.    For all its ERC Claimed Quarters, Plaintiff timely and properly filed its claim for refund and it has met all the compliance requirements underlying the claims.

45.    Through its agency, the IRS and the IRS's various form letters, the Defendant has repeatedly acknowledged the overpayment of taxes, and thus justifying a refund, and it has further stated it was delaying the issuance of the payment of the agreed ERC tax credit refunds because it "need[ed] to make sure [the Plaintiff didn't] owe other taxes."

46.    While repeatedly making the above statement of payment delay, the Defendant's agency, the IRS, has not properly identified, assessed, nor notified the Plaintiff of any specific federal taxes, employment taxes or otherwise, owed to the Defendant for which such a credit application would be appropriate.

47.    Plaintiff provides "credible evidence" along with this Complaint as **Exhibit A** and **Exhibit B**, *attached herein and described above*, that any reasonable person would view as credible to support the underlying facts and assertions in this Complaint.

48.    Plaintiff alleges that Defendant is not "substantially justified" in further delaying the tax refunds for Plaintiff's ERC Claimed Quarters; in so much that Defendant has no reasonable basis in either fact or law that could justify the additional delay of refunds to satisfy a reasonable person.[14]

49.    Pursuant to 26 U.S.C. § 7491, the burden of proof is shifted to the Defendant, the United States.

---

[13] *See* 26 U.S.C. § 7491(a); *see also* § 7430(c)(4)(A)(ii), and 28 U.S.C. § 2412(d)(1)(B).
[14] *See Huffman v. Commissioner,* 978 F.2d 1139, 1147 n.8 (9th Cir. 1992).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays this Court orders the Defendant, United States:

- Issue refunds for the Plaintiff's claim for refund of taxes as follows:

| Employment Taxes Period End | ERC Credit Claim Amount |
|---|---|
| June 30, 2020 | $ 176,028.98 |
| September 30, 2020 | $ 105,400.61 |
| December 31, 2020 | $ 243,026.09 |
| March 31, 2021 | $ 357,743.72 |
| June 30, 2021 | $ 132,955.79 |
| September 30, 2021 | $ 152,333.52 |
| Total | $ 1,167,488.71 |

- Issue additional refunds to Plaintiff for any interest entitled to it under the Internal Revenue Code (26 U.S.C.).

- Award Plaintiff reasonable attorney's fees and other legal costs permissible under 28 U.S.C. § 2412.

TRIAL BY JURY DEMANDED.

Dated:  May 24, 2024                                    Respectfully submitted,

**/s/** ***Justin H. DiLauro***
JUSTIN H. DILAURO, ESQ.
Sr. Tax Attorney and Owner/Manager
DiLauro Tax Law PLLC
9639 Hillcroft Street, Suite 844
Houston, Texas 77096
(888) 463-5829
(713) 456-2027 (fax)
JHD@DiLauroTaxLaw.com
USDC PAWD (Admitted 5/15/2024)
USDC TXSD No:   3865386
Texas State Bar No:  24055404

Counsel for Plaintiff
PD Homecare Associates, LLC dba
Liken Home Care